## North East Coal Co. v. Charles et al., Workmen's Compensation Board.

November 23, 1948.

Wells & Wells for appellant.

No attorney for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

This appeal is from a judgment approving an award of the Workmen's Compensation Board to Pete Charles

for a hernia sustained by him during the course of his employment by the North East Coal Company. The question raised on this appeal by the Company is:

"If the employer (appellant) makes a bona fide tender of a radical operation, which according to the unanimous medical testimony is calculated to relieve the employee's (appellee) hernia with a minimum of danger, may the board award compensation prior to the operation?"

While the Company still maintains its position that Charles' hernia is not compensable, it concedes that it is not a judicial function to disturb the findings of an administrative body supported by competent and probative evidence. We gather, however, that the Company feels that both the finding of the Board and the supporting evidence are "absurdly illogical." The position is taken on this appeal that the award was not made in conformity with the controlling statutes, KRS 342.025 and KRS 342.035.

Under the circumstances we deem it unnecessary to discuss the evidence supporting the Board's finding that Charles be allowed compensation "for 75% permanent disability to the body as a whole at the rate of $9.00 per week from April 30, 1942, until such time as the defendant furnishes and pays for a successful operation for the plaintiff, not to exceed in all a period of 335 weeks, together with 6% interest on all past due installments." There was evidence showing that Charles sustained a hernia sometime in February, 1942; that he notified the Company of his injury; that he sought medical attention and an operation; that he was discharged by the Company on April 30, 1942, apparently because he had reached the age which entitled him to old age benefits; and that, while he had worked for the Company some 30 years before he sustained the hernia, he has been unable to do any manual labor since that time. Of course the Company offered evidence in support of its contention that Charles had sustained no compensable injury.

The parts of the statutes relied upon by the Company are quoted in its brief. These quotations follow:

KRS 342.025. "* * * (2) In all such cases *where*

*liability for compensation exists,* the employer shall, within the limits of KRS 342.020, provide competent surgical treatment by radical operation. * * *

"(3) * * * If the employe submits to the operation he shall, in addition to the surgical benefits herein provided for, be entitled to compensation for his actual disability following such operation. * * *"

KRS 342.035. "(2) * * * No compensation shall be payable for the death or disability of an employe if his death is caused, or if and in so far as his disability is aggravated, caused or continued, by an unreasonable failure to submit to or follow any competent surgical treatment or medical aid or advice."

The Board found that liability for compensation existed. Charles sought medical attention, but it was not until after the Referee made his finding in April, 1946, that the Company made a tender of a radical operation. This tender follows:

"If it should be finally determined that the plaintiff herein received a traumatic compensable hernia while in defendant's employment, then defendant desires to, and hereby offers at its expense, an operation for the cure of said hernia."

In May, 1946, the full Board approved the recommendation of the Referee. The Board's action was affirmed in the Johnson Circuit Court in March, 1948. It is now "finally determined" by this Court that Charles did receive a compensable hernia. The conditional tender for a radical operation was not made by the Company until some four years after Charles sustained the hernia, but we gather from the Company's argument that they would have us hold that, even under these circumstances, Charles would not be entitled to compensation until "following such operation." We do not believe the statutes involved warrant such a construction.

When the sections are read as a whole it is apparent to us that, even though there are certain specific requirements relating to compensation for a hernia, once it is determined that a hernia is compensable an employee is entitled to his compensation just as any other injured employee if he submits to an operation that is not "more than ordinarily unsafe." Provision is made for a con-

dition arising when an employee refuses to submit to an operation which is not "more than ordinarily unsafe." Here no such circumstance exists. It was the employee and not the employer seeking the operation. The part of paragraph 3 of KRS 342.025 relied upon by the Company does not lend itself to the interpretation placed upon it. The statute means that once an operation has been tendered and submitted to by the employee, he shall receive, in addition to medical benefits, "compensation for his actual disability following such operation." This means that if he suffered no actual disability following the operation he would be entitled to no compensation. If he did suffer an actual disability, he would be entitled to such compensation following the operation as determined by the Board. Now that this case has been "finally determined," all questions concerning the offer or refusal of an operation, and, in the event it is performed, the degree of its success or failure may be presented to the Board through the proper channels.

Judgment affirmed.